UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## 24-20398-CR-RUIZ/LOUIS

Case No. _____

18 U.S.C. § 371
18 U.S.C. § 1348
15 U.S.C. § 78j(b)
15 U.S.C. § 78ff
17 C.F.R. § 240.10b-5
17 C.F.R. § 240.10b-5-1
17 C.F.R. § 240.10b-5-2
18 U.S.C. § 981(a)(1)(C)

FILED BY _____ **CB** _____ D.C.

*Sep 12, 2024*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES OF AMERICA

v.

**FEDERICO NANNINI,**
**MAURO NANNINI,**
**ALEJANDRO THERMIOTIS, and**
**FRANCISCO TONARELY,**

                    **Defendants.**
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless alleged otherwise:

### The Defendants

1.      Defendant **FEDERICO NANNINI** was a resident of Coral Gables, Florida.  From in or around July 2021 until on or about January 6, 2023, **FEDERICO NANNINI** worked as an Associate in the Mergers and Acquisitions Transaction Advisory Team at Global Consulting Firm 1 in its Miami, Florida, office.

2.      As a Global Consulting Firm 1 employee, **FEDERICO NANNINI** was subject to policies that restricted him from using material, non-public information ("MNPI") to trade in the

securities of any company and from providing another person with MNPI under circumstances that indicate he was trying to help such person make a profit or avoid a loss.

3.     **FEDERICO NANNINI** was the son of defendant **MAURO NANINNI** and lived in his father's home in Coral Gables.

4.     Defendant **MAURO NANNINI** was a resident of Coral Gables, Florida.  **MAURO NANNINI**'s resume stated that he "Obtained Securities Representative License to trade in the Caracas Stock Exchange" in 1990; that he "[t]rained and supervised 4 Exchange Traders" in Venezuela between 1987 and 1990; that he worked for one of the "top 3 Brokerage Firms in the Caracas Stock Exchange in terms of traded volume" between 1990 and 1994; and that he performed "Stock Trading activities" for a Miami-based company in 2000.

5.     Defendant **ALEJANDRO THERMIOTIS** was a resident of Miami, Florida. **THERMIOTIS** received a Bachelor of Business Administration degree, with a major in Finance, in 2021.  In or around June 2022 and July 2022, **THERMIOTIS** was an aspiring securities trader. On his July 22, 2022, resume, **THERMIOTIS** wrote that his professional goal was to "realize [his] full potential as a trader."

6.     Defendant **FRANCISCO TONARELY** was a resident of Key Biscayne, Florida, and an employee of a premium wine and spirits distributor.

7.     **FEDERICO NANNINI**, **ALEJANDRO THERMIOTIS**, and **FRANCISCO TONARELY** were friends from childhood who attended high school together in Pinecrest, Florida. **THERMIOTIS** and **TONARELY** were aware that **FEDERICO NANNINI** worked at Global Consulting Firm 1 with a focus on mergers and acquisitions.

**Relevant Individuals**

8.      "Thermiotis Family Member 1" and "Thermiotis Family Member 2" were relatives of **ALEJANDRO THERMIOTIS**.  Thermiotis Family Member 2 lived in Wellington, Florida.

**Relevant Entities**

9.      MasTec, Inc. ("MasTec") was an infrastructure and construction company based in Coral Gables, Florida.  MasTec's common stock traded under the symbol "MTZ" on the NASDAQ Stock Market ("NASDAQ"), which was headquartered in New York, New York.

10.     Infrastructure and Energy Alternative Inc. ("IEA") was an infrastructure construction and renewable energy company headquartered in Indianapolis, Indiana.  IEA's common stock traded on the NASDAQ under the symbol "IEA".

**The Proposed Acquisition**

11.     From in or around June 2022 through in or around July 2022, Global Consulting Firm 1 served as a financial adviser to MasTec in a proposed acquisition of IEA (the "Proposed Acquisition").  **FEDERICO NANNINI** was assigned to work on the Proposed Acquisition on or about June 6, 2022.

12.     Through his assignment on the Proposed Acquisition, **FEDERICO NANNINI** became aware of MNPI regarding the nature and timing of MasTec's acquisition of IEA.

13.     As an employee of Global Consulting Firm 1, **FEDERICO NANNINI** owed duties of trust and confidence to Global Consulting Firm 1 and MasTec.

14.     On July 24, 2022, MasTec and IEA entered into a merger agreement under which MasTec would acquire all outstanding shares of IEA in a cash-and-stock transaction valued at $14.00 per IEA share.  From in or around June 2022 until the announcement of the Proposed Acquisition, IEA shares traded at less than $10.00 per share.

3

15.    On July 25, 2022, MasTec and IEA publicly announced the acquisition.  IEA's share price increased significantly following the announcement.

### The Co-Conspirators' Trading Accounts

16.    **MAURO NANNINI** maintained two brokerage accounts, one at Fidelity Investments with an account number ending in 1894 ("Fidelity Account x1894") and one at Morgan Stanley with an account number ending in 7313 ("Morgan Stanley Account x7313").  These accounts were in the name of NS Holdings Trust, for which **MAURO NANNINI** served as a trustee.

17.    **ALEJANDRO THERMIOTIS** maintained two brokerage accounts, one at TD Ameritrade with an account number ending in 7109 ("TD Ameritrade Account x7109") and one at Webull Financial with an account number ending in 3273 ("Webull Account x3273").

18.    **FRANCISCO TONARELY** maintained a brokerage account at Robinhood with an account number ending in 7019 ("Robinhood Account x7019").

19.    Thermiotis Family Member 1 maintained a brokerage account at E Trade with an account number ending in 6614 ("E Trade Account x6614").

20.    Thermiotis Family Member 2 maintained a brokerage account at Robinhood with an account number ending in 1471 ("Robinhood Account x1471").

### Market Background

21.    The Financial Industry Regulatory Authority ("FINRA") was a regulatory organization tasked with regulating and overseeing member exchange markets, including the NASDAQ.

22.    A "security" is defined by federal law as "any . . . stock . . . or . . . any put, call, straddle, option . . . or, in general, any interest or instrument commonly known as a 'security' . . . ." 15 U.S.C. § 78c(a)(10).

23.     "Options" are financial contracts that give the option holder the right but not the obligation to buy or sell a stock or other asset or instrument at a specified price within a specified time period.  The specified price is known as the "strike price."  The end of the specified time period is known as the "expiration date," which is the last day that the option contract is valid.

## COUNT 1
### Conspiracy to Commit Securities Fraud
### (18 U.S.C. § 371)

1.     The General Allegations section of this Indictment is realleged and incorporated by reference, as though fully set forth herein.

2.     From in or around June 2022, and continuing through in or around January 2023, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**FEDERICO NANNINI,**
**MAURO NANNINI,**
**ALEJANDRO THERMIOTIS, and**
**FRANCISCO TONARELY,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to:

a.     knowingly and with intent to defraud, execute a scheme and artifice to defraud any person in connection with any security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, that is, shares of IEA common stock and options, and to obtain by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of said securities, in violation of Title 18, United States Code, Section 1348; and,

b.      knowingly and willfully, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.10b-5-1, and 240.10b-5-2.

## PURPOSE OF THE CONSPIRACY

3.   ·     It was the purpose of the conspiracy for the defendants and their co-conspirators to unjustly enrich themselves by: (i) using stolen confidential information about an upcoming corporate acquisition to buy shares and options in the target company, IEA, and then sell those securities at a higher price when the acquisition was announced publicly and the value of the securities appreciated; and (ii) concealing the fraudulent scheme from Global Consulting Firm 1, MasTec, and IEA, among others.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

4.       **FEDERICO NANNINI** learned through his position at Global Consulting Firm 1 about the Proposed Acquisition, information that he knew was MNPI.

5.     **FEDERICO NANNINI** tipped his father, **MAURO NANNINI**, and his close friend, **ALEJANANDRO THERMIOTIS**, about the Proposed Acquisition so the two of them could profit by purchasing shares and options in IEA stock before the acquisition was announced publicly and selling those securities at a profit after the public announcement.

6.     **FEDERICO NANNINI** personally provided **MAURO NANNINI** and **ALEJANDRO THERMIOTIS** real-time updates about the Proposed Acquisition.  The updates were MNPI and included the fact that MasTec was taking steps to acquire IEA, the likelihood of the Proposed Acquisition, and MasTec's likely purchase price of IEA stock.

7.     **ALEJANDRO THERMIOTIS** relayed **FEDERICO NANNINI**'s MPNI about the Proposed Acquisition to **THERMIOTIS** and **FEDERICO NANNINI**'s other high school friend, **FRANCISO TONARELY**, and to Thermiotis Family Members 1 and 2.

8.     **MAURO NANNINI, ALEJANDRO THERMIOTIS**, and **FRANCISCO TONARELY** all understood the confidential nature of the information about the Proposed Acquisition.

9.     **MAURO NANNINI, ALEJANDRO THERMIOTIS, FRANCISCO TONARELY**, and Thermiotis Family Member 2 in fact purchased IEA stock and options in June and July 2022 and sold the securities at a higher price after the IEA acquisition was announced publicly on July 25, 2022.  **MAURO NANNINI, THERMIOTIS, TONARLEY**, and Thermiotis Family Member 2 all profited from trading on **FEDERICO NANNINI**'s inside information, netting over $1 million.  Thermiotis Family Member 1 bought IEA stock on June 16, 2022, but then quickly sold it approximately 14 minutes later at a small loss.

10.     In or around December 2022, FINRA sent MasTec a list of people who traded in IEA stock around the time of the acquisition, a list that included **MAURO NANNINI, ALEJANDRO**

**THERMIOTIS**, and Thermiotis Family Members 1 and 2. MasTec provided the list to Global Consulting Firm 1. When an employee of Global Consulting Firm 1 asked **FEDERICO NANNINI** if he knew anyone on the list, **FEDERICO NANNINI** lied and denied knowing **THERMIOTIS**, Thermiotis Family Member 1, and Thermiotis Family Member 2.

11.     **FEDERICO NANNINI** benefitted and sought to benefit from passing the MPNI to his friend and family in a number of ways, including through: (1) his close familial and financial relationship with **MAURO NANNINI** and; (2) his close friendship with **ALEJANDRO THERMIOTIS**, a relationship that included the exchange of job prospects in the finance industry. **FEDERICO NANNINI** also sought to benefit from a promise by **ALEJANDRO THERMIOTIS** to buy him a Rolex watch with the profits of the insider trade.

12.     **ALEJANDRO THERMIOTIS** benefitted and sought to benefit from passing **FEDERICO NANNINI**'s inside information to his friend and family, including by **FRANCISCO TONARELY**'s family member supporting **THERMIOTIS**'s application to a Miami yacht club in June 2022.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the objects and purpose thereof, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

### Initial Disclosure of the Proposed Acquisition

1.     On or about June 6, 2022, **FEDERICO NANNINI** received an email bearing the subject line "New Secret Project" requesting that he be granted access to the data room for the Proposed Acquisition.

2.      On June 7, 2022, **FEDERICO NANNINI** gained access to the data room for the Proposed Acquisition that contained financial analysis showing MasTec was trying to acquire IEA.

<u>The June 2022 Insider Trading</u>

*The Nannini Stock Purchases*

3.      On or about June 8, 2022, at around 7:45 PM, **MAURO NANNINI** purchased 3,000 shares of IEA in his Fidelity Account x1894 for approximately $27,120.00 (an average price per share of about $9.00).

4.      On or about June 9, 2022, between around 9:49 AM and 11:58 AM, **MAURO NANNINI** purchased 9,500 shares of IEA in his Fidelity Account x1894 for approximately $86,951.00 (an average price per share of about $9.10).

5.      On or about June 9, 2022, at around 5:55 PM, **FEDERICO NANNINI** sent an email to his supervisor at Global Consulting Group 1 stating: "Please find the most recent databook [for the Proposed Acquisition] attached."

6.      On or about June 10, 2022, at around 11:58 AM, **MAURO NANNINI** purchased an additional 7,500 IEA shares in his Morgan Stanley Account x7313 for approximately $66,847.25 (an average price per share of about $8.90).

*The Thermitois Stock Purchases*

7.      On or about June 15, 2022, at approximately 9:23 AM, **FEDERICO NANNINI** and **ALEJANDRO THERMIOTIS** spoke telephonically for approximately 13 minutes.

8.      On or about June 15, 2022, at approximately 9:35 AM, **ALEJANDRO THERMIOTIS** logged into TD Ameritrade Account x7109 and liquidated his position in a publicly traded video game company at a loss of approximately $44,766.43.

9

9.      On or about June 15, 2022, **ALEJANDRO THERMIOTIS** sent **FEDERICO NANNINI** the following text messages at the approximate times:

| Time | From | To | Message |
|------|------|----|---------|
| 9:47:10 AM | ALEJANDRO THERMIOTIS | FEDERICO NANNINI | "Whats ticker" |
| 9:47:22 AM | ALEJANDRO THERMIOTIS | FEDERICO NANNINI | "Don't even tell me just call me later" |

10.     On or about June 15, 2022, from approximately 10:27 AM until 10:45 AM, **ALEJANDRO THERMIOTIS** bought 80,356 IEA shares in Webull Account x3273 for approximately $712,511.85 (an average price per share of about $8.87).

11.     On or about June 15, 2022, **FEDERICO NANNINI** and **ALEJANDRO THERMIOTIS** sent and received the following text messages at the approximate times:

| Time | From | To | Message |
|------|------|----|---------|
| 9:58:25 AM | ALEJANDRO THERMIOTIS | FEDERICO NANNINI | "Getting murked[1] lol" |
| 11:02:08 AM | FEDERICO NANNINI | ALEJANDRO THERMIOTIS | "Lmaoo"[2] |
| 11:02:15 AM | FEDERICO NANNINI | ALEJANDRO THERMIOTIS | "You shouldve waited for 8.6" |
| 11:02:29 AM | ALEJANDRO THERMIOTIS | ALEJANDRO THERMIOTIS | "No shit" |
| 11:02:44 AM | ALEJANDRO THERMIOTIS | FEDERICO NANNINI | "Im talking about the market tho" |

12.     On or about June 15, 2022, between approximately 3:33 PM and 3:49 PM, **ALEJANDRO THERMIOTIS** bought 100,000 IEA shares in TD Ameritrade Account x7109 for approximately $898,967 (an average price per share of about $9.00).

---

[1] "Murked" is a slang term for murdered.

[2] "Lmaoo" is a slang term for laughing my a** off.

13.     On or about June 15, 2022, at approximately 3:53 PM, Thermiotis Family Member 1 texted **ALEJANDRO THERMIOTIS**: "What is the ticker?"

14.     On or about June 15, 2022, at approximately 3:55 PM, **ALEJANDRO THERMIOTIS** called Thermiotis Family Member 1.

15.     On or about June 15, 2022, at approximately 3:55 PM, Thermiotis Family Member 1 logged into E Trade Account x6614.

16.     On or about June 15, 2022, Thermiotis Family Member 1 deposited $100,000 into E Trade Account x6614.

17.     On or about June 16, 2022, between approximately 9:42 AM and 9:50 AM, **ALEJANDRO THERMIOTIS** bought 9,644 shares of IEA in Webull Account x3273 for approximately $81,286.20 (an average price per share of about $8.42).

18.     On or about June 16, 2022, at approximately 9:47 AM, **ALEJANDRO THERMIOTIS** bought 10,000 shares of IEA in TD Ameritrade Account x7109 for approximately $85,000 (an average price per share of about $8.50).

19.     On or about June 16, 2022, at approximately 10:30 AM, Thermiotis Family Member 2 texted **ALEJANDRO THERMIOTIS** her address in Wellington, Florida.

20.     On or about June 16, 2022, at approximately 10:34 AM, Thermiotis Family Member 1 bought 7,000 shares of IEA for approximately $59,661.85 in E Trade Account x6614 (an average price per share of approximately $8.50).

21.     On or about June 16, 2022, at approximately 10:38 AM, **ALEJANDRO THERMIOTIS** called Thermiotis Family Member 1.

22.     On or about June 16, 2022, at approximately 11:00 AM, **ALEJANDRO THERMIOTIS** arrived at Thermiotis Family Member 2's home.

23. On or about June 16, 2022, at approximately 11:15 AM, Thermiotis Family Member 2 bought 1,592 shares of IEA for approximately $13,400 in Robinhood Account x1471 (an average price per share of approximately $8.40).

*The TONARELY Stock Purchases*

24. On or about June 16, 2022, at approximately 2:23 PM, **FRANCISCO TONARELY** sent **ALEJANDRO THERMIOTIS** the following text messages:

| Time | From | To | Message |
|---|---|---|---|
| 2:23:07 PM | **FRANCISCO TONARELY** | **ALEJANDRO THERMIOTIS** | "I want to make some money right now" |
| 2:23:09 PM | **FRANCISCO TONARELY** | **ALEJANDRO THERMIOTIS** | "What do we do" |
| 2:23:55 PM | **FRANCISCO TONARELY** | **ALEJANDRO THERMIOTIS** | "I bet you the SPY rips tomorrow" |

25. On or about June 16, 2022, at approximately 3:34 PM, **ALEJANDRO THERMIOTIS** called **FRANCISCO TONARELY**.

26. On or about June 16, 2022, at approximately 3:35 PM, **FEDERICO NANNINI** called and spoke with **ALEJANDRO THERMIOTIS** for approximately 35 minutes.

27. On or about June 16, 2022, while **ALEJANDRO THERMIOTIS** was on a call with **FEDERICO NANNINI**, **THERMIOTIS** and **FRANCISCO TONARELY** sent and received the following text messages at the approximate times:

| Time | From | To | Message |
|---|---|---|---|
| 3:35:48 PM | **ALEJANDRO THERMIOTIS** | **FRANCISCO TONARELY** | "Don't text me about it" |
| 3:35:59 PM | **FRANCISCO TONARELY** | **ALEJANDRO THERMIOTIS** | "Call me" |
| 3:40:19 PM | **FRANCISCO TONARELY** | **ALEJANDRO THERMIOTIS** | "Call me now" |

28.     On or about June 16, 2022, at approximately 4:11 PM, **FRANCISCO TONARELY** called and spoke with **ALEJANDRO THERMIOTIS** for approximately 3 minutes.

29.     On or about June 16, 2022, at approximately 4:14 PM, **FEDERICO NANNINI** called and spoke with **ALEJANDRO THERMIOTIS** for approximately 66 minutes.

30.     On or about June 16, 2022, between approximately 4:14 PM and 4:18 PM, **FRANCISCO TONARELY** bought 321 shares of IEA for approximately $2,800.50 in Robinhood Account x7019 (an average price of $8.70 per share).

31.     On or about June 16, 2022, **ALEJANDRO THERMIOTIS** and **FRANCISCO TONARELY** sent and received the following text messages at the approximate times:

| Time | From | To | Message |
|---|---|---|---|
| 5:23:55 PM | **ALEJANDRO THERMIOTIS** | **FRANCISCO TONARELY** | "Not a soul okay" |
| 5:24:15 PM | **FRANCISCO TONARELY** | **ALEJANDRO THERMIOTIS** | "Obviously" |
| 5:24:19 PM | **FRANCISCO TONARELY** | **ALEJANDRO THERMIOTIS** | "You told me not to" |

32.     On or about June 16, 2022, at approximately 9:36 PM, **FRANCISCO TONARELY** texted **ALEJANDRO THERMIOTIS**: "Yacht club tomorrow."

33.     On or about June 20, 2022, at approximately 10:40 PM, **ALEJANDRO THERMIOTIS** texted **FRANCISCO TONARELY** a photograph of a Miami yacht club membership sponsor form and then sent the following text messages at the approximate times:

| Time | From | To | Message |
|---|---|---|---|
| 10:41:18 PM | **ALEJANDRO THERMIOTIS** | **FRANCISCO TONARELY** | "Show him this form if you want he could fill it out now and you can just send me a pic ill email you the form" |

| Time | From | To | Message |
|---|---|---|---|
| 10:41:46 PM | **ALEJANDRO THERMIOTIS** | **FRANCISCO TONARELY** | "Or he can fill it out tomorrow morning and just send me a pic whatever is easier if not ill pass by no heat" |

34.     On or about June 21, 2022, at **FRANCISCO TONARELY**'s urging, **FRANCISCO TONARELY**'s family member signed a letter sponsoring **ALEJANDRO THERMIOTIS**'s application to join a Miami yacht club, stating: "Alejandro is a man of outstanding character, holding himself to high standards both academically and professionally."

<u>June 22, 2022 – Update on the Proposed Acquisition</u>

35.     On or about June 22, 2022, at approximately 10:26 AM, **FEDERICO NANNINI** took a screen shot of an email he received from an employee of MasTec stating: "I still have not receive[d] any positive or negative update on [Proposed Acquisition]. Will keep you posted."

36.     On or about June 22, 2022, **FEDERICO NANNINI** and **ALEJANDRO THERMIOTIS** sent and received the following text messages at the approximate times:

| Time | From | To | Message |
|---|---|---|---|
| 10:28:36 AM | **FEDERICO NANNINI** | **ALEJANDRO THERMIOTIS** | "Just got an update we still dk" |
| 10:29:04 AM | **FEDERICO NANNINI** | **ALEJANDRO THERMIOTIS** | "No positive or negative but we'll be kept updated" |
| 10:29:11 AM | **ALEJANDRO THERMIOTIS** | **FEDERICO NANNINI** | "Tomorrow?" |
| 10:29:14 AM | **FEDERICO NANNINI** | **ALEJANDRO THERMIOTIS** | "Not sure" |

37.     On or about June 22, 2022, at approximately 10:36 AM, **MAURO NANNINI** bought an additional 1,500 shares of IEA for approximately $13,800 (an average price of $9.20 per share).

38.     On or about June 22, 2002, at approximately 10:52 AM, **FRANCISCO TONARLEY** called and spoke with **ALEJANDRO THERMIOTIS** for approximately 2 minutes.

14

39.     On or about June 22, 2022, **ALEJANDRO THERMIOTIS** and **FRANCISCO TONARELY** sent and received the following text messages at the approximate times:

| Time | From | To | Message |
|---|---|---|---|
| 10:57:56 AM | **FRANCISCO TONARELY** | **ALEJANDRO THERMIOTIS** | "Do we sell?" |
| 11:55:04 AM | **ALEJANDRO THERMIOTIS** | **FRANCISCO TONARELY** | "Sub 9" |
| 11:55:28 AM | **FRANCISCO TONARELY** | **ALEJANDRO THERMIOTIS** | "Somethings up" |
| 11:55:34 AM | **FRANCISCO TONARELY** | **ALEJANDRO THERMIOTIS** | "The insiders are selling" |
| 11:55:52 AM | **FRANCISCO TONARELY** | **ALEJANDRO THERMIOTIS** | "Are u going to sell" |
| 12:01:55 PM | **FRANCISCO TONARELY** | **ALEJANDRO THERMIOTIS** | "??" |
| 12:02:26 PM | **ALEJANDRO THERMIOTIS** | **FRANCISCO TONARELY** | "Idk bro" |
| 12:02:32 PM | **ALEJANDRO THERMIOTIS** | **FRANCISCO TONARELY** | "Probably not wait to hear morw" |

July 7, 2022 – Proposed Acquisition is "looking like 60/40 no go"

40.     On or about July 6, 2022, at approximately 5:01 PM, **FEDERICO NANNINI** received an email from an intern at Global Consulting Firm 1 attaching a draft power point titled "[Proposed Acquisition] Financial Due Diligence Report." The report stated that it was for MasTec's "sole benefit and use" and included a detailed analysis of IEA's financials, including revenue recognition, monthly income statement, contracts in place, working capital, and a summary of assets, liabilities, and stockholder equity.

41.     On or about July 7, 2022, between approximately 9:31 AM and 9:33 AM, **MAURO NANNINI** sold 19,500 shares of IEA stock in his Fidelity Account x1894 for $154,730.54 (an average price of $7.90 a share).

15

42.      On or about July 7, 2022, at approximately 9:49 AM, **FEDERICO NANNINI** opened on his work computer a slide deck dated that day and titled "[Proposed Acquisition] Financial Due Diligence Report" for MasTec.

43.      On or about July 7, 2022, **FEDERICO NANNINI** and **ALEJANDRO THERMIOTIS** sent and received the following text messages at the approximate times:

| Time | From | To | Message |
|------|------|------|------|
| 10:28:30 AM | **FEDERICO NANNINI** | **ALEJANDRO THERMIOTIS** | "Yoyo" |
| 10:28:39 AM | **FEDERICO NANNINI** | **ALEJANDRO THERMIOTIS** | "Its looking like 60/40 no go" |
| 10:44:57 AM | **ALEJANDRO THERMIOTIS** | **FEDERICO NANNINI** | "60 yes 40 no?" |
| 10:47:55 AM | **FEDERICO NANNINI** | **ALEJANDRO THERMIOTIS** | "Opposite" |
| 10:48:02 AM | **FEDERICO NANNINI** | **ALEJANDRO THERMIOTIS** | "When u coming in town" |
| 10:48:26 AM | **ALEJANDRO THERMIOTIS** | **FEDERICO NANNINI** | "Im going to have a heart out here bro" |
| 10:48:32 AM | **ALEJANDRO THERMIOTIS** | **FEDERICO NANNINI** | "Attack" |
| 10:48:59 AM | **FEDERICO NANNINI** | **ALEJANDRO THERMIOTIS** | "Just sell above ur cost" |
| 10:49:07 AM | **FEDERICO NANNINI** | **ALEJANDRO THERMIOTIS** | "Ur 50 cents away no?" |
| 10:49:30 AM | **ALEJANDRO THERMIOTIS** | **FEDERICO NANNINI** | "Yeah pretty far from my cost in my opinion" |
| 10:59:07 AM | **FEDERICO NANNINI** | **ALEJANDRO THERMIOTIS** | "Will find out by the 15th but 12 earnings will be insane" |
| 10:59:14 AM | **FEDERICO NANNINI** | **ALEJANDRO THERMIOTIS** | "Q2" |

<u>July 14, 2022 Update – Proposed Acquisition – "Its going thru"</u>

44.      On July 14, 2022, at approximately 9:14 AM, **FEDERICO NANNINI** responded "ok will do" to an email from his supervisor at Global Consulting Firm 1 telling him to: "Focus on [Proposed Acquisition] so we can push it close to the finish by end of day today."

45. On July 14, 2022, at approximately 11:24 AM, **FEDERICO NANNINI** opened on his work computer an Excel workbook titled "[Proposed Acquisition] Report Databook," containing a nearly complete financial analysis on the Proposed Acquisition.

46. On or about July 14, 2022, **FEDERICO NANNINI** and **ALEJANDRO THERMIOTIS** sent and received the following text messages at the approximate times:

| Time | From | To | Message |
|---|---|---|---|
| 11:26:57 AM | **FEDERICO NANNINI** | **ALEJANDRO THERMIOTIS** | "Its going thru" |
| 11:28:25 AM | **FEDERICO NANNINI** | **ALEJANDRO THERMIOTIS** | "Holy shit bro" |
| 11:28:38 AM | **ALEJANDRO THERMIOTIS** | **FEDERICO NANNINI** | "Bro call me ltr" |
| 11:28:42 AM | **ALEJANDRO THERMIOTIS** | **FEDERICO NANNINI** | "Don't text" |
| 11:28:47 AM | **ALEJANDRO THERMIOTIS** | **FEDERICO NANNINI** | "But lfg"[3] |
| 11:29:07 AM | **FEDERICO NANNINI** | **ALEJANDRO THERMIOTIS** | "My dads out down 40 gs" |
| 11:29:23 AM | **ALEJANDRO THERMIOTIS** | **FEDERICO NANNINI** | "Im down like 100" |

47. On or about July 14, 2022, **FEDERICO NANNINI** and **ALEJANDRO THERMIOTIS** sent and received the following text messages at the approximate times:

| Time | From | To | Message |
|---|---|---|---|
| 11:34:59 AM | **FEDERICO NANNINI** | **ALEJANDRO THERMIOTIS** | "Probz gonna be around 15" |
| 11:35:04 AM | **FEDERICO NANNINI** | **ALEJANDRO THERMIOTIS** | "Or a little higher" |
| 11:35:13 AM | **ALEJANDRO THERMIOTIS** | **FEDERICO NANNINI** | "Bro just call me later" |
| 11:35:20 AM | **FEDERICO NANNINI** | **ALEJANDRO THERMIOTIS** | "Okok" |

---

[3] "lfg" is a slang term for let's f**king go.

48.     On or about July 15, 2022, between approximately 9:20 AM and 10:35 AM, **MAURO NANNINI** purchased 36,000 IEA shares between his Morgan Stanley Account x7313 and his Fidelity Account x1894 for approximately $312,373 (an average price per share of $8.68).

49.     On or about July 15, 2022, at approximately 7:31 PM, **FEDERICO NANNINI** sent **ALEJANDRO THERMIOTIS** a text with this picture:



50.     On or about July 15, 2022, at approximately 7:32 PM, **ALEJANDRO THERMIOTIS** replied to **FEDERICO NANNINI**: "😂😂😂 I got you . . . Lets see 14.75-16 first[.]"

51.     On or about July 18, 2022, **MAURO NANNINI** purchased 85 call options in IEA with a $10 strike price between his Fidelity Account x1894 and his Morgan Stanley Account x7313.

<u>July 25, 2022 – Corporate Disclosure Day</u>

52.     On or about July 25, 2022, at approximately 8:27 AM, after MasTec and IEA announced the Proposed Acquisition, Thermiotis Family Member 2 sent this screen shot to **ALEJANDRO THERMIOTIS** with the IEA stock price at an approximately 26 percent increase:



53.     On or about July 25, 2022, between approximately 9:04 AM and 9:31 AM, **MAURO NANNINI** sold 34,500 shares of IEA for $454,458.83 (an average price of $13.17 a share).

54.     On or about July 25, 2022, at approximately 9:33 AM, **MAURO NANNINI** sold 85 IEA call options for $27,915.99.

55.     On or about July 25, 2022, at approximately 9:59 AM, Thermiotis Family Member 2 sold 1,592 IEA shares for approximately $21,323.85 (an average price of $13.39 a share).

56.     On or about July 25, 2022, between approximately 10:28 AM and 11:46 AM, **ALEJANDRO THERMIOTIS** sold 200,000 IEA shares for $2,701,949.01 (an average price of $13.50 a share).

57. On or about July 25, 2022, at approximately 11:02 AM, **FRANCISCO TONARELY** sold approximately 320 IEA shares for $4,302.14 (an average price of $13.40 a share).

58. On or about July 27, 2022, at approximately 10:14 AM, **FEDERICO NANNINI** texted **ALEJANDRO THERMIOTIS**: "You wanna hook it up for the boy. I know its a little over budget but this is the one" along with the following photograph:



59. On or about July 27, 2022, at approximately 10:15 AM, **ALEJANDRO THERMIOTIS** replied to **FEDERICO NANNINI**: "Hahaha yeah but give it a bit . . . Prices should come down a bit on everything."

60. On or about July 29, 2022, at approximately 8:26 AM, Thermiotis Family Member 2 texted **ALEJANDRO THERMIOTIS**: "I don't know what this means but the green looks pretty" with this screen shot concerning Robinhood Account x1471:



61.    On or about July 29, 2022, at approximately 8:26 AM, **ALEJANDRO THERMIOTIS** texted Thermiotis Family Member 2: "It means you have out performed the market by 50-40% hahaha[.]"

<u>The FINRA List and the Cover Up</u>

62.    On or about December 21, 2022, at approximately 7:04 PM, **FEDERICO NANNINI** received an email in his Global Consulting Firm 1 email account attaching a list from FINRA of people who traded in IEA stock around the time of MasTec's acquisition, a list that included **MAURO NANNINI** and his spouse, **ALEJANDRO THERMIOTIS**, and Thermiotis Family Members 1 and 2.

63.    On or about December 22, 2022, at approximately 1:24 PM, **FEDERICO NANNINI** called and spoke with **ALEJANDRO THERMIOTIS** for approximately 8 minutes and 25 seconds.

64.    On or about December 22, 2022, at approximately 1:34 PM, **FEDERICO NANNINI** called and spoke with **ALEJANDRO THERMIOTIS** for approximately 1 minute and 16 seconds.

65.    On December 28, 2022, at approximately 12:16 PM, in response to the email in Paragraph 63, **FEDERICO NANNINI** wrote an email to MasTec counsel with an employee of

Global Consulting Firm 1 cc'ed: "I received the list and I see my parents – Mauro Nannini and/or [his mother] on the list."

66.     On or about December 28, 2022, at approximately 6:48 PM, **FEDERICO NANNINI** emailed representatives of MasTec and Global Consulting Firm 1 that he "did not know any of the other individuals and/or entities on the [FINRA List] other than [his] parents."

67.     On or about December 28, 2022, at approximately 11:00 PM, **MAURO NANNINI** took a screen shot of a March 7, 2022, article announcing IEA's 2021 fourth quarter and full year results.

68.     On or about January 5, 2023, **FEDERICO NANNINI** emailed his resignation letter to Global Consulting Firm 1, stating: "I am resigning due to the Company giving me an ultimatum to hand over my personal cellphone."

All in violation of Title 18, United States Code, Section 371.

### COUNTS 2-13
### Securities Fraud
### (18 U.S.C. § 1348)

1.     The General Allegations section of the Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     From in or around June 2022, through in or around January 2023, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**FEDERICO NANNINI,**
**MAURO NANNINI,**
**ALEJANDRO THERMIOTIS, and**
**FRANCISCO TONARELY,**

did knowingly and with intent to defraud execute and attempt to execute a scheme and artifice to defraud any person in connection with any security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under

Section 15(d) of the Securities Exchange Act of 1934, that is, shares of IEA common stock and options, and to obtain by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of said securities.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was the purpose of the scheme and artifice for the defendants and their accomplices to unjustly enrich themselves by: (i) using stolen confidential information about an upcoming corporate acquisition to buy shares and options in the target company, IEA, and then sell those securities at a higher price when the acquisition was announced publicly and the value of the securities appreciated; and (ii) concealing the fraudulent scheme from Global Consulting Firm 1, MasTec, and IEA, among others.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE

4.      Paragraphs 4 through 12 of the Manner and Means Section of Count 1 of this Indictment are realleged and incorporated by reference herein as a description of the scheme and artifice.

## EXECUTION AND ATTEMPTED EXECUTION OF THE SCHEME AND ARTIFICE

5.      On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants specified in each count below, for the purpose of executing, and attempting to execute, and in furtherance of the aforesaid scheme and artifice to defraud, did cause the purchase and sale of securities, as more particularly described in each count set forth below:

| COUNT | DEFENDANT(S) | APPROX. DATE | DESCRIPTION OF SECURITIES TRANSACTION |
|-------|--------------|--------------|----------------------------------------|
| 2 | **FEDERICO NANNINI** and **MAURO NANNINI** | June 10, 2022 | Purchase of 7,500 IEA shares in Morgan Stanley Account x7313. |

| COUNT | DEFENDANT(S) | APPROX. DATE | DESCRIPTION OF SECURITIES TRANSACTION |
|---|---|---|---|
| 3 | **FEDERICO NANNINI** and **ALEJANDRO THERMIOTIS** | June 15, 2022 | Attempted purchase of 100,000 IEA shares in TD Ameritrade Account x7109. |
| 4 | **FEDERICO NANNINI** and **ALEJANDRO THERMIOTIS** | June 15, 2022 | Purchase of 10,000 IEA shares in TD Ameritrade Account x7109. |
| 5 | **FEDERICO NANNINI** and **ALEJANDRO THERMIOTIS** | June 15, 2022 | Purchase of 9,800 IEA shares in TD Ameritrade Account x7109. |
| 6 | **FEDERICO NANNINI** and **ALEJANDRO THERMIOTIS** | June 16, 2022 | Purchase of 10,000 IEA shares in TD Ameritrade Account x7109. |
| 7 | **ALEJANDRO THERMIOTIS** and **FRANCISCO TONARELY** | June 16, 2022 | Purchase of 300 IEA shares in Robinhood Account x7019. |
| 8 | **FEDERICO NANNINI** and **MAURO NANNINI** | June 24, 2022 | Purchase of 5,000 IEA shares in Morgan Stanley x7313. |
| 9 | **FEDERICO NANNINI** and **MAURO NANNINI** | July 15, 2022 | Purchase of 15,000 IEA shares in Morgan Stanley x7313. |
| 10 | **FEDERICO NANNINI** and **MAURO NANNINI** | July 25, 2022 | Sale of 17,000 IEA shares in Morgan Stanley x7313. |
| 11 | **FEDERICO NANNINI** and **ALEJANDRO THERMIOTIS** | July 25, 2022 | Sale of 10,000 IEA shares in TD Ameritrade Account x7109. |
| 12 | **FEDERICO NANNINI** and **ALEJANDRO THERMIOTIS** | July 25, 2022 | Sale of 10,000 IEA shares in Webull Financial Account x3273. |
| 13 | **ALEJANDRO THERMIOTIS** and **FRANCISCO TONARELY** | July 25, 2022 | Sale of approximately 320 IEA shares in Robinhood Account x7019. |

In violation of Title 18, United States Code, Sections 1348(1) and (2) and 2.

## COUNTS 14 -25
### Securities Fraud
### (15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R. §§ 240.10b-5, 240.10b-5-1, & 240.10b-5-2)

1.      The General Allegations section of the Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates listed below, in the Southern District of Florida and elsewhere, each defendant listed below knowingly and willfully, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, that is, IEA common stock, and did (a) employ a device, scheme and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon any person, in connection with the purchase and sale of said securities; that is, purchasing and selling IEA common stock on the basis of material nonpublic information concerning such company and its securities in breach of a duty of trust and confidence that each owed directly, indirectly, and derivatively, to Global Consulting Firm 1 and MasTec.

### MANNER AND MEANS OF THE INSIDER TRADING SCHEME

3.      Paragraphs 4 through 12 of the Manner and Means Section of Count 1 are realleged and incorporated by reference herein as a description of the scheme and artifice.

4.      In furtherance of the scheme, the defendants used means and instrumentalities of interstate commerce, including interstate wire communications.

## SECURITIES TRANSACTIONS

5.    On or about the dates listed below, in the Southern District of Florida, and elsewhere, the defendants listed below, knowingly and willfully, directly and indirectly, for the purpose of executing and in furtherance of the aforesaid insider trading scheme, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, and did: (a) employ a device, scheme and artifice to defraud; and (b) engage in acts, practices and courses of business which would and did operate as a fraud and deceit upon any person, in connection with the purchase and sale of securities, as described below:

| COUNT | DEFENDANT(S) | APPROX. DATE | DESCRIPTION OF SECURITIES TRANSACTION |
|-------|-------------|--------------|----------------------------------------|
| 14 | FEDERICO NANNINI and MAURO NANNINI | June 10, 2022 | Purchase of 7,500 IEA shares in Morgan Stanley Account x7313. |
| 15 | FEDERICO NANNINI and ALEJANDRO THERMIOTIS | June 15, 2022 | Attempted purchase of 100,000 IEA shares in TD Ameritrade Account x7109. |
| 16 | FEDERICO NANNINI and ALEJANDRO THERMIOTIS | June 15, 2022 | Purchase of 10,000 IEA shares in TD Ameritrade Account x7109. |
| 17 | FEDERICO NANNINI and ALEJANDRO THERMIOTIS | June 15, 2022 | Purchase of 9,800 IEA shares in TD Ameritrade Account x7109. |
| 18 | FEDERICO NANNINI and ALEJANDRO THERMIOTIS | June 16, 2022 | Purchase of 10,000 IEA shares in TD Ameritrade Account x7109. |
| 19 | ALEJANDRO THERMIOTIS and FRANCISCO TONARELY | June 16, 2022 | Purchase of 300 IEA shares in Robinhood Account x7019. |
| 20 | FEDERICO NANNINI and MAURO NANNINI | June 24, 2022 | Purchase of 5,000 IEA shares in Morgan Stanley x7313. |

| COUNT | DEFENDANT(S) | APPROX. DATE | DESCRIPTION OF SECURITIES TRANSACTION |
|---|---|---|---|
| 21 | **FEDERICO NANNINI** and **MAURO NANNINI** | July 15, 2022 | Purchase of 15,000 IEA shares in Morgan Stanley x7313. |
| 22 | **FEDERICO NANNINI** and **MAURO NANNINI** | July 25, 2022 | Sale of 17,000 IEA shares in Morgan Stanley x7313. |
| 23 | **FEDERICO NANNINI** and **ALEJANDRO THERMIOTIS** | July 25, 2022 | Sale of 10,000 IEA shares in TD Ameritrade Account x7109. |
| 24 | **FEDERICO NANNINI** and **ALEJANDRO THERMIOTIS** | July 25, 2022 | Sale of 10,000 IEA shares in Webull Financial Account x3273. |
| 25 | **ALEJANDRO THERMIOTIS** and **FRANCISCO TONARELY** | July 25, 2022 | Sale of approximately 320 IEA shares in Robinhood Account x7019. |

In violation of Title 15, United States Code, Section 78j(b) and 78ff(a); Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.10b5-1, and 240.10b5-2; and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS

1.      The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **FEDERICO NANNINI**, **MAURO NANNINI**, **ALEJANDRO THERMIOTIS**, and **FRANCISCO TONARELY**, have an interest.

2.      Upon conviction of a violation of  Title 18, United States Code, Section 371, specifically conspiracy to commit securities fraud in violation of Title 18, United States Code, Section 1348; Title 15, United States Code, Sections 78j(b) and 78ff; and Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.10b-5-1, and 240.10b-5-2, as alleged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is

derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.     Upon conviction of a violation of Title 18, United States Code, Section 1348, as alleged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

4.     Upon conviction of a violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.10b-5-1, and 240.10b-5-2, as alleged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

5.     If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to the forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

████████████████████

FOREPERSON

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

ALEXANDRA D. COMOLLI
ELI S. RUBIN
ELIZABETH YOUNG
ASSISTANT UNITED STATES ATTORNEYS

29

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

**CASE NO.:  24-20398-CR-RUIZ/LOUIS**

**v.**

**CERTIFICATE OF TRIAL ATTORNEY**

FEDERICO NANNINI et al.,

_____/
                    Defendants.

**Superseding Case Information:**

**Court Division** (select one)

☒ Miami   ☐ Key West   ☐ FTP
☐ FTL   ☐ WPB

New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3.  Interpreter: (Yes or No) No
    List language and/or dialect: _____

4.  This case will take __8__ days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)

    I    ☐ 0 to 5 days
    II   ☒ 6 to 10 days
    III  ☐ 11 to 20 days
    IV   ☐ 21 to 60 days
    V    ☐ 61 days and over

    (Check only one)

    ☐ Petty
    ☐ Minor
    ☐ Misdemeanor
    ☒ Felony

6.  Has this case been previously filed in this District Court? (Yes or No) No
    If yes, Judge _____ Case No. _____

7.  Has a complaint been filed in this matter? (Yes or No) No
    If yes, Magistrate Case No. _____

8.  Does this case relate to a previously filed matter in this District Court? (Yes or No) No
    If yes, Judge _____ Case No. _____

9.  Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) No

13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No

14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No

15. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

16. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? Yes

By: _____

ALEXANDRA COMOLLI
Assistant United States Attorney
Court ID No.     A5502803

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:  FEDERICO NANNINI**

**Case No:** _____

Count #: 1

Conspiracy to Commit Securities Fraud

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment:** Five (5) years imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) years
* **Max. Fine:** $250,000 or twice the gross gain or loss

Counts #: 2-6, 8-12

Securities Fraud

Title 15, United States Code, Section 78j(b) & 78ff; 17 C.F.R. §§ 240.10b-5 & 240.10b-5-1
* **Max. Term of Imprisonment:** Twenty (20) years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) years
* **Max. Fine:** $5,000,000 or twice the gross gain or gross loss

Counts #: 14-18, 20-24

Securities Fraud

Title 18, United States Code, Section 1348
* **Max. Term of Imprisonment:** Twenty-five (25) years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Five (5) years
* **Max. Fine:** $250,000 or twice the gross gain or loss

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name:** <u>**MAURO NANNINI**</u>

**Case No:** _____

Count #: 1

<u>Conspiracy to Commit Securities Fraud</u>

<u>Title 18, United States Code, Section 371</u>
* **Max. Term of Imprisonment:** Five (5) years imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) years
* **Max. Fine:** $250,000 or twice the gross gain or loss

Counts #: 2-10

<u>Securities Fraud</u>

<u>Title 15, United States Code, Section 78j(b) & 78ff; 17 C.F.R. §§ 240.10b-5 & 240.10b-5-1</u>
* **Max. Term of Imprisonment:** Twenty (20) years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) years
* **Max. Fine:** $5,000,000 or twice the gross gain or gross loss

Counts #: 14, 20-22

<u>Securities Fraud</u>

<u>Title 18, United States Code, Section 1348</u>
* **Max. Term of Imprisonment:** Twenty-five (25) years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Five (5) years
* **Max. Fine:** $250,000 or twice the gross gain or loss

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name:  ALEJANDRO THERMIOTIS**

**Case No:**

Count #: 1

Conspiracy to Commit Securities Fraud

Title 18, United States Code, Section 371
* **Max. Term of Imprisonment:** Five (5) years imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) years
* **Max. Fine:** $250,000 or twice the gross gain or loss

Counts #: 3-7, 11-13

Securities Fraud

Title 15, United States Code, Section 78j(b) & 78ff; 17 C.F.R. §§ 240.10b-5 & 240.10b-5-1
* **Max. Term of Imprisonment:** Twenty (20) years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) years
* **Max. Fine:** $5,000,000 or twice the gross gain or gross loss

Counts #: 15-19, 23-25

Securities Fraud

Title 18, United States Code, Section 1348
* **Max. Term of Imprisonment:** Twenty-five (25) years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Five (5) years
* **Max. Fine:** $250,000 or twice the gross gain or loss

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:  FRANCISCO TONARELY** _____

**Case No:** _____

Count #: 1

Conspiracy to Commit Securities Fraud _____

Title 18, United States Code, Section 371 _____
* **Max. Term of Imprisonment:** Five (5) years imprisonment
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) years
* **Max. Fine:** $250,000 or twice the gross gain or loss

Counts #: 7, 13

Securities Fraud _____

Title 15, United States Code, Section 78j(b) & 78ff; 17 C.F.R. §§ 240.10b-5 & 240.10b-5-1
* **Max. Term of Imprisonment:** Twenty (20) years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Three (3) years
* **Max. Fine:** $5,000,000 or twice the gross gain or gross loss

Counts #: 19, 25

Securities Fraud _____

Title 18, United States Code, Section 1348 _____
* **Max. Term of Imprisonment:** Twenty-five (25) years imprisonment as to each count
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** Five (5) years
* **Max. Fine:** $250,000 or twice the gross gain or loss

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**